657 A.2d 927

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Craig MURPHY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1995.

Decided April 18, 1995.

320

Oscar N. Gaskins, Philadelphia, for Craig Murphy.

Catherine Marshall, Ronald Eisenberg, Karen A. Brancheau, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gen. Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

Following a jury trial in the Court of Common Pleas of Philadelphia County, Appellant, Craig Murphy, was found guilty of murder in the first degree and terroristic threats. A sentencing hearing was conducted after which the jury recommended that appellant be sentenced to death after it found that one aggravating circumstance, that appellant had a signif-

icant history of felony convictions involving the use or threat of violence, 42 Pa.C.S. § 9711(d)(9), outweighed two mitigating circumstances: age of appellant at the time of the crime, 42 Pa.C.S. § 9711(e)(4), and any other evidence of mitigation, 42 Pa.C.S. § 9711(e)(8). The court formally imposed a sentence of death on the first-degree murder conviction and additionally imposed a term of imprisonment of two and one half to five years for the conviction of terroristic threats, to run concurrently with the sentence of death. Direct appeal from the judgment of sentence was taken to this Court pursuant to 42 Pa.C.S. § 9711(h).

In cases where the capital sanction is imposed, we are obligated to independently examine the sufficiency of the evidence. *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *reh'g. denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper references favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987); *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976).

A review of the record reveals that on January 21, 1981, Raymond Gambrell, the deceased, and his friend, Steven Brown, spent the day travelling from one liquor establishment to another purchasing wine to consume. At about 10:30 p.m., they were walking down Clearfield Street in North Philadel-

phia where they encountered appellant and two of his cohorts who were in a Buick parked between Rosewood and Carlisle Streets. As Gambrell and Brown walked past the parked automobile, appellant made "smart" remarks to them; however, they continued on their way. Later that evening, while Gambrell and Brown were drinking a newly purchased bottle of wine, they saw the appellant and his cronies circling the block in the Buick stalking them.

At approximately 1:00 a.m. on January 22, 1981, after another trip to a speakeasy, Gambrell and Brown encountered appellant and his cohorts who were in the Buick at 15th and Clearfield Streets. As they walked past the car, appellant said, "There they go." Appellant then got out of the car from his driver's seat and confronted Raymond Gambrell by the steps to an apartment building next to a vacant lot. Brown stood by as appellant accused Gambrell of breaking into appellant's mother's house. Gambrell told appellant that he did not do it. Appellant then pulled out a gun and told Brown to get into the car. When he hesitated, appellant said to Brown, "You think I'm playing, get in the car . . . sit between them."

After he was inside the car, seated between Ronald and Bernie Smith in the back seat along with Dennis Cook, Brown saw appellant place his gun to Gambrell's head and escort him to the vacant lot. Moments later, two gunshots rang out from the direction of the lot.

When appellant returned to the automobile with his gun in hand a couple of minutes later, one of appellant's cronies asked him where he shot Gambrell. Appellant replied, "Where do you think?" Another passenger in the Buick then said, "If you shot him where I think you shot him, he's dead, you got a body." Appellant then turned around, pointed his gun at Brown and said, "You better not say anything because, I swear to Allah, I'm going to get you no matter where you're at." He then drove away from the scene and dropped Brown off at Broad and Olney Street at around 1:30 a.m. Before leaving though, appellant told Brown that if the police were to

question him about this incident, he should tell them that he was not with Gambrell that evening.

At approximately 1:54 a.m., the police discovered Gambrell lying on his back in the vacant lot. The police officers observed blood flowing from the bridge of his nose, his right ear, and the back of his head. Subsequently, they located Brown who was brought in at 4:30 a.m. Brown, although visibly nervous and frightened, made a statement to police implicating appellant. On February 3, 1981, an arrest warrant for appellant was executed.

Dr. Halbert Fillinger, who had performed the autopsy on the deceased, testified at trial that the cause of death was a gunshot wound to the head and the manner of death was homicide. It was his testimony that the projectile, a .38 caliber bullet, travelled back to front and right to left causing severe damage to the brain. A firearms examiner also testified that the .38 caliber bullet obtained from Gambrell's head was likely fired from a .357 Smith and Wesson revolver. Sergeant Schmid of the Philadelphia Police Department testified that a .357 caliber Smith and Wesson revolver was found in appellant's possession when he was arrested.

Gail Brown testified at trial that on the morning of January 22, 1981, her brother, Steven Brown, visited her. Brown, who was usually a strong person, told his sister that he was scared and frightened because threats had been made against the family and he was afraid for his life. Consequently, his family sent him to Portland, Maine to stay with his brother.

As a result, the preliminary hearing in this case was continued because the Commonwealth's star witness, Steven Brown, failed to appear. Two more scheduled dates passed while Brown was in Maine. Following the third listing on March 5, 1981, the trial court discharged appellant. On May 1, 1981, Steven Brown returned to Philadelphia. Two weeks later he was gunned down.

On May 13, 1981, Steven Brown was sitting on the porch of Jerome Watson's house located at 3122 N. 15th Street. Wanda Wilson, then ten years old, observed appellant stealthily approach the bushes in front of Watson's house and open fire,

killing Brown.[1] Renee Jones, who lived with appellant from 1979 to 1981, testified that she also saw appellant shoot up onto the porch of Watson's house. She then observed appellant and Bernie Smith jump into a car and take off down the street. Renee Jones further testified that appellant had told her that he shot Raymond Gambrell because Gambrell had broken into his mother's house. Moreover, in a statement she had given to police on February 24, 1986, Renee Jones stated that appellant shot Steven Brown because he was a witness to the Gambrell killing.[2]

Review of the facts of this case leaves no doubt that the evidence was sufficient for the jury to have determined that all elements of the crimes were established beyond a reasonable doubt. Accordingly, we will now proceed to address appellant's allegations of error relating to the trial underlying his conviction and sentence.

Appellant first contends that the trial court erred in allowing the Commonwealth to introduce evidence pertaining to the death of Steven Brown in its case in chief.

1. On July 21, 1986, following a jury trial, appellant was found guilty of murder of the first degree of Steven Brown. Appellant was sentenced to death on March 11, 1987. In *Commonwealth v. Murphy*, 527 Pa. 309, 591 A.2d 278 (1991), we reversed the judgment of sentence and remanded for a new trial based upon trial counsel's ineffectiveness for failing to cross-examine a Commonwealth witness on the basis of her then-existing juvenile probation. On remand, appellant pled guilty to first degree murder on November 21, 1991. Thereafter, he was sentenced to life imprisonment.

2. Two years passed from Steven Brown's murder before investigators were able to uncover enough evidence to bring appellant to trial for the Gambrell killing. On November 9, 1983, the police interviewed Dennis Cook about Raymond Gambrell's murder. Cook inculpated appellant. Cook subsequently testified at a preliminary hearing in which he again implicated appellant. Nevertheless, when trial began on May 24, 1984, defense counsel produced a signed affidavit from Cook in which he recanted his prior testimony. The Commonwealth then petitioned the court to allow Cook's preliminary hearing testimony to be used as substantive evidence. The trial court denied the Commonwealth's motion but certified the issue for interlocutory appeal to this Court and stayed the trial. On October 5, 1987, we reversed the trial court's order and allowed Cook's preliminary hearing testimony to be used as substantive evidence. No. 63 E.D. Miscellaneous Docket 1985, filed October 5, 1987.

328

It is well established in this Commonwealth that evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime solely to show his or her bad character and propensity for committing criminal acts. *Commonwealth v. Banks*, 513 Pa. 318, 349, 521 A.2d 1 (1987). This general rule nevertheless allows evidence of other crimes to be introduced to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others, or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Commonwealth v. Tedford*, 523 Pa. 305, 567 A.2d 610 (1989); *Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715 (1981).

Another special circumstance where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988).

The facts behind the murder of Steven Brown were so interwoven with the facts of the case *sub judice* that such evidence was properly admitted as res gestae. As detailed above, Brown was in the company of Gambrell the entire day prior to the shooting. Later that evening, Brown witnessed the killing of Gambrell by appellant. Brown was then threatened by appellant and told that he would be killed if he revealed anything about the murder. Nevertheless, Brown made a statement to police implicating appellant as Gambrell's killer. A few days later, Brown, in fear that appellant would follow through with his threat, fled to Portland, Maine. As a result, the original case against appellant for the Gambrell shooting was dismissed. Finally, the investigation into the Gambrell homicide was almost closed down after Brown was

shot and killed by appellant after Brown returned to Philadelphia.

Appellant, however, argues that this evidence should not have been admissible because this Court reversed his conviction for the murder of Steven Brown, citing *Commonwealth v. Fisher*, 527 Pa. 345, 591 A.2d 710 (1991).

In *Commonwealth v. Fisher*, at the time Fisher was tried for the killing of Ms. Rowden, he had previously been convicted in federal court for conspiracy to violate the constitutional rights of one Nigel Anderson, a government informant scheduled to testify at a then-imminent heroin trial. Anderson had been murdered and his death was an integral issue regarding the motivation for the killing of Ms. Rowden. During voir dire, the prosecution asked whether a venireman had read anything about Fisher's earlier federal conviction. The venireman responded affirmatively and was later selected to sit as a member of the jury. Following his conviction for Rowden's murder, Fisher's federal conviction was reversed and he was discharged. The late Justice McDermott, writing for a unanimous Court, stated, "Given that subsequent event, the question [asked of the venireman] loses pertinency and becomes prejudicial. With such a fact lodged in the jury box, its effect inestimable, a new trial is required." *Id.*, 527 Pa. 346, 591 A.2d at 711.

In *Commonwealth v. Murphy*, however, this Court did not discharge appellant on the charge of murder of Steven Brown. Rather, we reversed the judgment of sentence and remanded for a new trial. On remand, appellant pled guilty to the first degree murder of Brown, thereby admitting to the fact that had been presented to the jury in this case. Because the facts of the Brown murder were relevant, appellant is without a basis to claim that the admission of such evidence was erroneous.

Appellant next argues that the trial court erred in admitting into evidence the entire prior statements of Dennis Cook. Specifically, appellant claims that the trial court permitted the Commonwealth to use prior consistent statements to rehabili-

tate its witness, who had not been impeached by defense counsel.

The record reveals that on direct examination, Cook acknowledged that he signed an affidavit in which he recanted both his prior statement to police and his preliminary hearing testimony which inculpated the appellant. Cook also testified that he signed the affidavit out of fear and the contents were false. On cross-examination, defense counsel used the affidavit to attack Cook's credibility. On redirect examination, the Commonwealth attempted to use the transcript of the preliminary hearing in order to rehabilitate Cook. Following a defense objection, the trial court permitted the prosecutor to read Cook's prior testimony into the record.

Prior consistent statements are admissible to rehabilitate a witness's credibility and to rebut accusations or suggestions of recent fabrication or corrupt motives. *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986). Furthermore, the admission of a prior consistent statement is a matter to be decided by the trial judge in the exercise of his or her discretion in light of the character and degree of the impeachment. See *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980).

In the case *sub judice*, the defense counsel's line of questioning was designed to raise the inference that the affidavit was actually the true version of the events that transpired. Defense counsel elicited from Cook that Cook was made aware immediately prior to testifying at trial that he could be charged with perjury if he strayed from the testimony that he had given at the preliminary hearing. It is apparent that defense counsel wanted the jury to believe that Cook changed his testimony to avoid prosecution for perjury. The trial court's admission of Cook's prior preliminary hearing testimony in order to rebut the defense's inference of recent fabrication and to rehabilitate Cook was proper.[3]

3. The appellant's claim that the trial court erred when it permitted the Commonwealth to exceed the scope of proper redirect examination following cross-examination of Dennis Cook lacks merit. The Com-

Another contention appellant raises is that the trial court erred when it admitted allegedly inflammatory evidence concerning firearms which were possibly used in the killings of Raymond Gambrell and Steven Brown. Specifically, appellant claims that no nexus was established between these weapons and the crimes in this case.

A weapon may be admissible even where there is no proof that it is the actual murder weapon. *Commonwealth v. Johnson*, 419 Pa.Super. 625, 615 A.2d 1322 (1992); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). All that is required before a weapon may be introduced into evidence is a sufficient foundation demonstrating circumstances justifying an inference of the likelihood that the weapon was used in the course of the crime charged. *Commonwealth v. Johnson*, supra, 419 Pa.Super. 625, 615 A.2d 1322.

On September 5, 1983, during his arrest, appellant possessed both a .357 caliber Smith and Wesson revolver and a .357 Magnum Colt revolver. At trial, it was determined that the bullet recovered from Raymond Gambrell was consistent with and could have been fired from the .357 Smith and Wesson. The firearms examiner also testified that the Colt revolver had likely been used to kill Steven Brown. Furthermore, Alfred Keith Johnson identified the .357 caliber Smith and Wesson revolver as the weapon he saw in appellant's possession between 1981 and 1983.

Although not conclusively proven to be the murder weapon, these weapons were clearly relevant and properly admitted into evidence. Similarly, the testimony of Johnson, which was used by the Commonwealth to lay the foundation

monwealth's redirect examination of Cook merely rebutted the inference raised by defense counsel on cross-examination that Cook's current testimony was untruthful. The trial court therefore did not abuse its discretion because the Commonwealth did not exceed the proper scope of redirect examination. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 426 A.2d 1111 (1981).

332

for the admission of the weapon likely used to kill Gambrell, was also relevant and admissible.[4]

Appellant next claims that the trial court erred when it denied a motion for mistrial after Steven Northington, a defense witness, remarked during cross-examination that appellant was on "Death Row." A mistrial is warranted only where an event prejudicial to the defendant occurs at trial and where the unavoidable effect of that event is to deprive the defendant of a fair trial. *Commonwealth v. Nolen*, 535 Pa. 77, 634 A.2d 192 (1993) citing *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986).

The record reveals that the following exchange occurred:

"By Mr. King:

Q. Were you at Graterford or at Huntington?

A. I was at Huntington.

Q. How long have you been at Huntington?

A. A little more than a year.

Q. Is Mr. Murphy also at Huntington?

A. Yes, sir.

Q. How often did you see him at Huntington?

A. Maybe about five or six times.

Q. Never been on the ...

A. He's on Death Row.

Mr. Gaskins: Objection.

The Court: Sustained. Strike it from the record.

---

**4.** Appellant asserts for the first time that the Commonwealth did not provide the defense with any reports, expert opinions, or any indication that the .357 caliber Smith and Wesson or the .357 Magnum Colt revolver would be used against appellant at trial, notwithstanding the fact that he filed an Omnibus Discovery Motion. When he was arrested, however, appellant had in his possession the aforementioned weapons and therefore knew that these weapons could be introduced at trial. Consequently, the Commonwealth's alleged failure to disclose this information would not have prevented appellant from obtaining independent expert testimony and did not, as appellant claims, prejudice him in this regard. Furthermore, appellant's failure to so advise the trial court thwarted any possible measures the court could have fashioned to remedy the situation. See .Pa.R.Crim.P. 305E.

By Mr. King:

Q. How often did you see Mr. Murphy?

A. Maybe about six times, five or six times."

[N.T. dated 7/18/88 at p. 1957].

It is apparent that the Commonwealth did not intentionally elicit the remark made by Northington. Rather, the witness merely volunteered that appellant was on death row at Huntington prison. This remark was isolated and not repeated or exploited in any way. In addition, the trial court attempted to minimize any potential prejudice when it struck the reference from the record following defense counsel's objection. Appellant's claim is therefore meritless.

Appellant next contends that the trial court erred when it permitted the Commonwealth to introduce into evidence the juvenile arrest record of Terry Johnson, a defense witness.

The record reveals that appellant attempted to establish that he had not killed either Raymond Gambrell or Steven Brown. To this end, appellant called Terry Johnson, who testified on direct examination that at some unspecified time on January 21 or 22, 1981, Brown had killed Gambrell. Johnson also claimed that Bernard Smith had killed Brown. Finally, appellant brought out in direct examination of Johnson that Johnson had been in prison from 1984 until the time of trial and had earlier been in custody on juvenile charges. On cross-examination, the Commonwealth asked Johnson whether or not he was in custody on January 20, 1981. When the witness stated that he could not recall, the matter was not pursued any further.

Appellant opened the door for cross-examination of Johnson's juvenile record by eliciting from Johnson the fact that he had earlier been in custody on juvenile charges. The Commonwealth's cross-examination of Johnson was not focused on the juvenile charges per se but instead the period when he was incarcerated. The Commonwealth was clearly entitled to raise the inference that Johnson was in custody, and thus not present at the time of Gambrell's murder.

Another contention appellant raises is that the trial court erred in permitting the Commonwealth to engage in a course of conduct designed to inflame the passions of the jury and prevent appellant from receiving a fair and impartial trial. Specifically, appellant claims that the Commonwealth intimidated a witness, Bernie Smith, introduced irrelevant evidence as to appellant's connection to No. 9 Production Enterprises, Ltd., and inferred that witnesses were being paid not to testify against appellant.

It is well established that a claim of prosecutorial misconduct will only constitute grounds for relief when the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility toward the accused, so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. *Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811 (1994).

The record does not support the claims that a witness was intimidated or that inferences were made concerning witnesses being paid not to testify. As to appellant being linked to No. 9 Production Enterprises, Ltd., this claim of prosecutorial misconduct falls far short of the standard set forth in *Ragan,* supra.

Appellant next argues that the trial court erred when it admitted into evidence in the penalty phase convictions for crimes which were committed after the Gambrell killing.

The Commonwealth, in attempting to prove the aggravating circumstance 42 Pa.C.S. § 9711(d)(9), a history of felony convictions involving the use or threat of violence to the person, introduced into evidence the following crimes and conviction dates: (1) murder of the third degree and aggravated assault of Nobel Green and William Johnson on March 7, 1986, (2) murder of the first degree and sentenced to death for the killing of Steven Brown on July 21, 1986, and (3) murder of the first degree and life imprisonment for the slaying of James "Muscles" Reynolds on January 31, 1984.

It is well established in this Commonwealth that under 42 Pa.C.S. § 9711(d)(9), convictions for offenses occur-

ring after the subject offense are admissible at the penalty phase. See *Commonwealth v. Reid*, 533 Pa. 508, 626 A.2d 118 (1993); *Commonwealth v. Haag*, 522 Pa. 388, 562 A.2d 289 (1989); and *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984).

■ Although the aforementioned criminal acts occurred subsequent to the Gambrell killing, appellant was tried and convicted in all of the above cases prior to the appellant's trial for the Gambrell murder. Therefore, all of these prior felony convictions involving the use or threat of violence were properly admitted into evidence.

■ The final contention appellant raises is that the trial court erred in its jury charge and verdict slip during the penalty phase, which would have led the jurors to believe that the jury had to unanimously find each mitigating circumstance in violation of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).[5]

■ In *Mills v. Maryland*, the United States Supreme Court vacated a death sentence because of the possibility that the trial court's instruction coupled with the verdict slip could have been understood by the jury to mean that the jury was required to find mitigating circumstances unanimously in order for them to be weighed against aggravating circumstances. This is clearly not the case here.

5. Appellant raised four additional claims of error in the penalty phase, all of which are patently frivolous. Contrary to appellant's claim, the admission of the prior death sentence was proper because we have interpreted 42 Pa.C.S. § 9711(d)(9) as allowing consideration of essential and necessary facts pertaining to the prior convictions, including the circumstances of the crimes and the sentences imposed. *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984). Appellant's contention that the trial court charged the jury as to all of the possible aggravating circumstances is not borne out by the record. Another claim of error that is meritless is that the trial court erred in refusing to repeat the charge as to reasonable doubt during the penalty phase. There is no obligation to repeat the definition of reasonable doubt because it was correctly defined in the guilt phase. *Commonwealth v. Jasper*, 526 Pa. 497, 587 A.2d 705 (1991). Finally, there is no fixed burden of proof applicable to the weighing of aggravating and mitigating circumstances. See 42 Pa.C.S. § 9711(c)(1)(iv).

336

The record discloses that the trial court's jury instruction during the penalty phase was as follows:

The Sentencing Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

\* \* \* \* \* \*

Remember, your verdict, once again, must be unanimous. It cannot be reached by a majority vote. It must be the verdict of each and every one of you as with respect to the degree of guilt.

N.T. pp. 2802–2807.

The trial court's instructions did not express a need for unanimity in determining the existence of a mitigating circumstance. In fact, the jury instructions tracked the language in the Sentencing Code, 42 Pa.C.S. § 9711(c)(1), which never mentions or infers that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict. Additionally, the portion of the verdict slip where the jury is to list mitigating circumstances is set apart from sections A and B of the verdict slip which do require a finding of unanimity. For this reason, the trial court's jury instructions and verdict slip were proper under *Mills*.[6]

The information compiled by the Administrative Office of Pennsylvania Courts indicates that the sentence imposed in this case is not disproportionate to the sentence imposed in similar cases.

---

**6.** Appellant raises the issue as to whether the cumulative effect of the alleged assignments of error, taken as a whole, denied him a fair and impartial trial. This claim is mere makeweight, and a rather blatant attempt to bootstrap. We have found no … [errors], and no number of failed claims may collectively attain merit if they could not do so individually. *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992).

The judgment of sentence is therefore affirmed. The Prothonotary of the Supreme Court is directed to transmit a full and complete record of this case to the Governor, 42 Pa.C.S. § 9711(i).

MONTEMURO, Senior Justice, is sitting by designation.