

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-17-2003

# Evans v. Lavan

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2483

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Evans v. Lavan" (2003). *2003 Decisions.* Paper 269.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

NO. 02-2483

————

LEROY EVANS,
                              Appellant

v.

THOMAS LAVAN; THE DISTRICT ATTORNEY
OF THE COUNTY OF DELAWARE; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA; THE
DISTRICT ATTORNEY OF DELAWARE COUNTY

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 01-cv-03914)
District Judge:  Hon. Charles R. Weiner

————

Submitted Under Third Circuit LAR 34.1(a)
September 5, 2003

Before:  SLOVITER, NYGAARD, and ROTH, Circuit Judges

(Filed: September 17, 2003)

————

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Leroy Evans appeals from the order of the District Court denying his petition for a writ of habeas corpus, arguing that counsel was ineffective in failing to object to the prosecutor's closing argument remarks which allegedly injected racial prejudice into the case when she asked, referring to defense witness Lorraine Evans, "Was she so venomous because I was white?" After review of the record, we cannot conclude that Evans has satisfied the strict standard required to grant a writ of habeas corpus.

## I.

## FACTS and PROCEDURAL HISTORY

Leroy Evans was tried by a jury in a Pennsylvania state court and convicted on October 21, 1981, of first-degree murder, robbery, criminal conspiracy, burglary, tampering with evidence and hindering apprehension. He was sentenced to life in prison plus 9 to 20 years. The incident leading to Evans' conviction involved the robbery and murder of Emily Leo, a part-time Avon salesperson, whom Evans and co-conspirator Anthony Jones lured to Jones' home in Chester on November 11, 1980. During the commission of the crime, Evans and Jones choked Leo with a clothesline, beat her with an iron, and dragged her to a nearby lot. When Leo temporarily regained consciousness, Jones threw rocks at her until a passerby saw him and called the police. Leo died from loss of blood and massive head trauma one week after the attack.

Police apprehended Jones the day of the incident. Evans later entered Jones' house through a second-story window while police guarded the ground-level doors of the crime

2

scene, removed bloody clothes linking Jones to the crime, and destroyed them.  Evans was charged with burglary and tampering with evidence that day, and, after Jones agreed to plead guilty and offer testimony against Evans, Evans was also charged with murder, robbery and conspiracy.  In exchange for Jones' testimony, prosecutors sought a sentence of life imprisonment for Jones rather than the death penalty.

Jones' testimony at trial included the statement that a neighbor, Lorraine Evans (no relation to Appellant Leroy Evans), saw the two of them exit Jones' home during the commission of the crime.  However, the defense brought Lorraine Evans as a witness, and she testified that she had seen Evans in Jones' yard while the police were investigating what had happened that day but, contrary to Jones' own testimony, she stated she had not seen Jones and Evans exiting the house.  On cross-examination, the prosecutor observed that Lorraine Evans was hostile, and asked her why.  Lorraine Evans admitted being hostile, but attributed her attitude as a response to the hostile treatment she had received from the prosecutor.

During her closing statement, the prosecutor said the following about Lorraine Evans, who is African-American:

> And then they presented the testimony of Lorraine Evans – Lorraine Evans, the woman whose demeanor you saw on the witness stand, a woman who was venomous on the witness stand and who was hostile not only to the people that were questioning her but you could see it and you could tell it in the content of her answers.  Ladies and Gentlemen, was she so venomous because of what I stood for?  Was she so venomous because I was white?  Was she so venomous because she didn't like cops?

3

When Anthony Jones said Lorraine Evans saw him and Leroy Evans going out that back door does it make sense for him to name a woman like that who is so hostile to him? Wouldn't it, if Anthony Jones were going to fabricate something, wouldn't he pick one of the corner kids from the neighborhood or one of the women that lived in the project close to his family to say she saw the two of us coming out of the house and waived *[sic]* to us? But he didn't. He picked that rattle snake, Lorraine Evans.

App. II at 38a. Evans' defense counsel at trial did not object to these remarks.

In the 22 years since Evans' conviction, he has filed several unsuccessful challenges in state court. His direct appeal to the Superior Court was dismissed on July 3, 1984 for failure to file an appellate brief. In 1986, after filing a post-conviction collateral relief petition under Pennsylvania's Post Conviction Hearing Act ("PCHA"), Evans was granted the right to file a direct appeal nunc pro tunc. However, Evans never filed the appeal. Evans then filed another post-conviction collateral relief petition under the Post Conviction Relief Act ("PCRA"), but the state court denied relief. After several more attempts at appeal, Evans was granted another opportunity to file a direct appeal nunc pro tunc, and Evans filed his appeal on March 26, 1999. The Superior Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Evans' request for Allowance of Appeal.

Evans then filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence and raising the following issues: (1) whether the prosecutor improperly injected race into Evans' criminal trial; (2)

4

whether the Pennsylvania Supreme Court denied him procedural due process when it denied his latest petition for Allowance of Appeal; and (3) whether appellate counsel was ineffective in drafting the petition for Allowance of Appeal for abandoning four of Evans' five appellate issues.

On May 13, 2002, the District Court denied Evans' petition for a writ of habeas corpus, and granted a certificate of appealability under 28 U.S.C. § 2253 on issues (1) and (2). Issue (3) was dismissed because it had not yet been presented to the state court.

Evans filed this appeal on May 24, 2002, raising only the issue of whether the prosecutor's characterization of the defense witness as "venomous" and a "rattlesnake," as well as the prosecutor's attributing possible racial bias to the witness, invited racial bias on the part of the jury, and thus denied Evans (who himself is African-American) his due process right to a fair trial.

## II.

## DISCUSSION

This court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. We can conduct a plenary review of the state court's decision when the District Court relies exclusively on the state court record and has not conducted an evidentiary hearing in a federal habeas appeal. Moore v. Morton, 255 F.3d 95, 103 (3d Cir. 2001). Our review for a federal habeas corpus appeal is set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person

5

> in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has held that "federal habeas courts must make as the starting point of their analysis the state courts' determinations of fact," noting that AEDPA "sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (citation omitted).

We consider first whether the prosecutor's comments injected race into the case. We have noted that while "courts applying Supreme Court precedent have found that improper racial and ethnic references can be so prejudicial as to result in a denial of due process," not all such references constitute due process violations. Moore, 255 F.3d at 113-14. The Supreme Court has recognized that closing statements often involve improvisation on the part of prosecutors, and, although that does not excuse prosecutorial misconduct, it "do[es] suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

6

interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974).

In reviewing Evans' appeal, the Pennsylvania Superior Court did not find prosecutorial misconduct because the prosecutor's question referencing race was isolated and was related only to the witness' demeanor, not to the defendant. App. II at 38a. Applying the standard set out by the Pennsylvania Supreme Court in Commonwealth v. Murphy, 657 A.2d 927, 935 (Pa. 1995), the Superior Court determined that the prosecutor's question did not interfere with exculpatory testimony, and it did not "hinder objective weighing of evidence [nor] impede the rendering of a true verdict." App. II at 37a, 40a.

The District Court's view was similar. The Court stated,

> The evidence, as discussed by the trial court, was based in large part upon the evidence of Evans' co-conspirator who described in detail Evans' participation in the murder, burglary and obstruction of the ensuing investigation. The isolated comment of the prosecutor during her summation was not directed to Evans nor to the heart of the Commonwealth's evidence.

App. at 8a (Evans v. Lavan, C.A. No. 01-3914 (E.D. Pa. May 14, 2002)).

The District Court also suggested that the defense attorney's failure to object to the prosecutor's question in her closing statement could have been a strategic decision not to call attention to the issue, and did not rise to the standard for proving ineffective assistance of counsel as set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).

The Superior Court and District Court opinions are persuasive. Evans disputes the

finding that the prosecutor's reference to race was "isolated," arguing that the prosecutor's lengthy comments about defense witness Lorraine Evans' hostility culminated in the question about racial bias. Evans relies on our opinion in Moore, where we noted that "[r]acially or ethnically based prosecutorial arguments have no place in our system of justice" and are only permissible where they are not so prejudicial as to constitute due process violations. 255 F.3d at 113-14. But, as the Government points out, the Moore case is factually distinguishable. In Moore, the prosecutor based his theory of guilt on the fact that the African-American male defendant was married to a white woman and thus would be naturally attracted to the white woman he was accused of raping. Id. at 99. The conviction was reversed on the ground that even curative instructions from the trial judge could not overcome the prejudice caused by the prosecutor's statements. Id. at 118. In this case, defense witness Lorraine Evans' testimony was not so central to either the Government's or defense's theory of guilt or innocence that the prosecutor's question about the source of her hostility could infect the trial and subvert due process in the same way as in Moore.

We thus conclude that the state court opinion did not "result[ ] in a decision that was contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." See 28 U.S.C. § 2254(d). The court weighed the evidence in the record and determined that the prosecutor's statement attacking the witness' credibility was not unduly prejudicial. In addition, there is no misapplication of "clearly established Federal law" to support Evans' "secondary effect" argument – that the

prosecutor, by suggesting racial bias on the part of an African-American witness, invites racial bias on the part of any non-African-American jurors toward Evans, who is also African-American.

## III.

## CONCLUSION

For the reasons set forth, we will affirm the District Court's order denying a writ of habeas corpus.

---

TO THE CLERK:

Please file the foregoing opinion.


/s/ Dolores K. Sloviter
Circuit Judge