680 A.2d 1131

COMMONWEALTH of Pennsylvania, Appellee,

v.

Bernard McGILL, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 25, 1995.

Decided July 19, 1996.

182

Jeremy H. G. Ibrahim, Philadelphia, for Bernard McGill.

Catherine Marshall, Norman Gross, Philadelphia, Robert Graci, Attorney General's Office, Harrisburg, for Commonwealth.

Before NIX, C.J. and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

On July 28, 1992, following a trial by jury, Appellant, Bernard McGill, was found guilty of murder of the first degree,[1] aggravated assault,[2] recklessly endangering another person,[3] and possession of an instrument of crime.[4] A penalty phase hearing was held the following day, during which Appellant jumped out of a courtroom window and fell two stories, seriously injuring himself. The Honorable Eugene H. Clarke, Jr., declared a mistrial due to the fact that this event occurred in full view of the jury.

On January 23, 1993, a new jury was empaneled, and a penalty phase hearing was conducted. At the conclusion of the hearing, the jury found one aggravating circumstance[5] and no mitigating circumstances, and therefore set the sen-

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 2702.
3. 18 Pa.C.S. § 2705.
4. 18 Pa.C.S. § 907.
5. The sole aggravating circumstance found by the jury was that Appellant committed a killing while in the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6).

tence at death pursuant to 42 Pa.C.S. § 9711(c)(1)(iv). On March 23, 1993, trial counsel was permitted to withdraw, and new counsel was appointed. An evidentiary hearing was held in response to the filing of Appellant's post-verdict motions which alleged, *inter alia*, trial counsel's ineffectiveness. The trial court denied the post-verdict motions and imposed sentence. This direct appeal followed.

Appellant first contends that the evidence presented at trial was insufficient to sustain a guilty verdict for first degree murder. We note that, pursuant to the standard established in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we independently undertake a review of the evidence supporting a first degree murder conviction irrespective of whether such a challenge is specifically made. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, and draw all reasonable inferences derived therefrom, to determine whether there is support for the jury's finding of guilt beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 539–40, 510 A.2d 1217, 1218 (1986).

The evidence presented at trial established that on February 10, 1990, the victims, Susan Phillips and Karen Forte, were at Ms. Phillips' home for bible study. Appellant, who had been a boarder at Ms. Phillips' home until the previous week,[6] arrived at the residence and knocked on the door. Ms. Phillips opened the door, at which time Appellant indicated that he had returned to get his clothes. Ms. Phillips acknowledged the request, closed the door, and proceeded upstairs to retrieve Appellant's belongings.

As the two women were in the process of bringing Appellant's clothes downstairs, they noticed that Appellant had entered the residence without being invited. As Ms. Forte attempted to give him a bag of clothes, Appellant immediately

6. Ms. Phillips had asked Appellant to move out of the house the week before.

punched her in the face, causing her to fall to the ground. A violent struggle then ensued between Ms. Forte and Appellant during which Appellant brandished a knife. He stabbed, punched and kicked Ms. Forte. Appellant then grabbed Ms. Forte by the hair and dragged her into the kitchen. Ms. Phillips screamed and begged Appellant to stop what he was doing and leave the premises. Appellant replied, "[S]hut up [before] I put this knife in your back...." (N.T. 7/21/92, 65).

Appellant then proceeded to bind Ms. Forte's wrists with some type of cord. As Appellant pulled down Ms. Forte's pantyhose, she pleaded with him not to rape her. Appellant responded by punching and kicking her in the head until she lost consciousness for some undetermined period.

At some point during Ms. Forte's unconsciousness, Appellant severely beat Ms. Phillips, who was seventy-two years old at the time. In addition to punching her with his fists, Appellant beat Ms. Phillips in the head with a metal file. He struck her with such force that the handle of the file broke off.

When Ms. Forte regained consciousness, Appellant came back in to the room and accused her of "faking." (N.T. 7/21/92, 67). He repeatedly choked, punched, and kicked Ms. Forte, complaining that she would not die. Appellant finally struck Ms. Forte over the head with a ketchup bottle, breaking the bottle. At that point, Ms. Forte feigned unconsciousness in the hope that Appellant would believe that she was dead. Appellant left the scene shortly thereafter.

Ms. Forte lay still for several minutes in order to insure that Appellant was gone. She then went to a neighbor's house to call the police. Both victims were taken to the hospital; however, Ms. Phillips died as a result of the injuries inflicted by Appellant. Ms. Forte spent three days in intensive care and three days in general admission recovering from her injuries. While there, she viewed a photographic array in which she identified Appellant as the person that attacked her.

Appellant was ultimately arrested and charged with various crimes resulting from the foregoing episode. While in police custody, he confessed to the crime, stating that he went to Ms.

Phillips' house with the intention of stealing money in order to purchase drugs. (N.T. 7/23/92, 41, 43). He further admitted that he punched and struck Ms. Phillips in the head with a metal file. (N.T. 7/23/92, 42, 44–45). Appellant also confessed that, after beating the two women, he stole approximately two hundred dollars from Ms. Phillips' purse and "[s]pent it all on cocaine." (N.T. 7/23/92, 42–43).

█ Based on the eyewitness testimony of Karen Forte, as well as the confession of Appellant himself, we are satisfied that there is more than ample evidence to support the jury's finding of guilt for first degree murder in this case. "If a deadly force is knowingly applied by the defendant to another, the specific intent to kill is as evident as if the defendant stated the intent to kill at the time the force was applied." *Commonwealth v. Williams*, 537 Pa. 1, 13, 640 A.2d 1251, 1257 (1994) (citation omitted). Thus, Appellant's claim that he lacked the specific intent to sustain a conviction for first degree murder must be rejected.

█ Appellant next claims that no attempts were made during the course of his trial to monitor his competency. He therefore asserts, without citation to legal authority, that his incompetency must be presumed. This argument does not rise to the level of a cognizable claim of error which can be properly evaluated by this Court. Appellant has not suggested that he was, in fact, incompetent during his trial. Instead, he submits that he was deprived of a fair trial merely because his competency was not monitored. In addition to the fact that this is not a basis for relief, a review of the record does not support Appellant's contention that his competency was not monitored.

A person is incompetent to stand trial where he is 'substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense.' The person asserting incompetency has the burden of proving it by clear and convincing evidence. Moreover, the determination of competency rests in the sound discretion of the trial court.

*Commonwealth v. Sam,* 535 Pa. 350, 357, 635 A.2d 603, 606 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994) (citations omitted); *see also* 50 P.S. § 7402. We note that two months prior to trial, a report was prepared by doctors of Norristown State Hospital, where Appellant had received treatment, indicating that Appellant was competent to stand trial. Due to the age of the report at the time of trial, the trial court, in the presence of counsel, called the hospital on July 14, 1992, and spoke with the acting director, Leona Baldwin. (N.T. 7/16/92, 4). Ms. Baldwin confirmed that Appellant was still competent at that time. (N.T. 7/16/92, 4).

The trial court thoroughly and comprehensively responded to the issue of Appellant's competency during trial by citing to a number of specific instances in which the court engaged in colloquies with Appellant. *Commonwealth v. McGill,* No. 3920–22, 3924 March Term 1990, slip op. at 15–21 (C.P. Philadelphia County Feb. 10, 1995). Based on these exchanges and first-hand observation of Appellant throughout the trial, the court concluded that Appellant "was competent to stand trial, understood the nature of the proceedings, and conferred with counsel throughout the proceedings." *Id.* at 21.

■ With respect to the allegation that Appellant's competency was not monitored during the trial, the trial court took strong exception:

> Nothing could be farther from the truth. As the record reveals[,] communication was maintained with the doctors at Norristown State Hospital and regular monitoring of defendant's medication was undertaken. This specious argument has no foundation whatsoever. Moreover, [Appellant] was examined by a defense psychologist who found that [Appellant] could not avail himself of a diminished capacity defense.

*Id.* at 22. Our review of the record satisfies us that the trial court took deliberate steps to insure that Appellant was competent throughout the course of the proceedings, and that

the court acted within its discretion in determining that Appellant was competent to stand trial. *See Commonwealth v. Logan,* 519 Pa. 607, 624, 549 A.2d 531, 540 (1988) ("The determination of competency . . . rests in the sound discretion of the trial judge and can be disturbed only upon a showing of abuse of that discretion."). Accordingly, this allegation of error must be rejected.[7]

 Appellant's next assignment of error concerns trial counsel's failure to investigate certain character witnesses explicitly identified by Appellant. He claims that counsel spoke to these witnesses and unilaterally decided not call them during trial. Due to the fact that Appellant has not identified these witnesses nor the substance of their proposed testimony, we are unable to properly evaluate this claim. In order to prove counsel's ineffectiveness for failure to call a particular witness, there must, at a minimum, be a showing that the witness's testimony would have been beneficial or helpful in establishing the asserted defense. *Commonwealth v. Durst,* 522 Pa. 2, 6, 559 A.2d 504, 506 (1989). We note that Appellant raised this issue in an evidentiary hearing following the filing of his post-verdict motions. The trial court summarily rejected this claim, noting that Appellant "did not discuss the issue or identify any proposed character witnesses." *Commonwealth v. McGill,* No. 3920–22, 3924 March Term 1990, slip op. at 26 (C.P. Philadelphia County Feb. 10, 1995). We likewise find that Appellant has done no more than make a generalized, unsubstantiated allegation concerning counsel's failure to present character witnesses. Accordingly, this claim of ineffectiveness must fail.[8]

7. In another part of his brief, Appellant sets forth in an argument heading that counsel was ineffective for failure to request a psychological evaluation of Appellant throughout the trial. Although this claim is never developed beyond the mere allegation contained in the heading, it is obvious that our disposition of the underlying issue does not entitle Appellant to relief because counsel can never be deemed ineffective for failing to raise a meritless claim. *See, e.g., Commonwealth v. Parker,* 503 Pa. 336, 469 A.2d 582 (1983).

8. When questioned by the trial court about the presentation of character witnesses on his behalf, Appellant identified only his aunts and his father. (N.T. 7/24/92, 5–6). Although defense counsel spoke with these

Appellant next argues that the cumulative effect of the evidentiary errors in his trial had a prejudicial effect and resulted in his denial of a fair trial. Appellant has not specified nor cited to anything in the record that can be discerned as an evidentiary error committed by the trial court. Instead, Appellant seems to suggest that the other arguments presented in his brief, when taken together, constitute reversible error. We disagree.

We note that Appellant's previous claims of error in the guilt phase of his trial have failed for lack of merit. It necessarily follows that there can be no "cumulative effect" prejudice when there was no harm in the first instance. In *Commonwealth v. Murphy*, 540 Pa. 318, 657 A.2d 927 (1995), we rejected an identical argument, noting that such a claim " 'is mere makeweight, and a rather blatant attempt to bootstrap. We have found no ... [errors], and no number of failed claims may collectively attain merit if they could not do so individually.' " *Id.* at 336 n. 6, 657 A.2d at 936 n. 6 (quoting *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992)). This claim is meritless.

Appellant's final two claims of error concern the penalty phase of his trial. He first takes exception to the fact that the guilt and penalty phases of his trial were conducted before two different juries. This claim is frivolous in light of the reason for the second penalty phase hearing. During the first penalty phase hearing, Appellant jumped out of a courtroom window in plain view of the jury and fell several stories. At that point, defense counsel understandably requested a mistrial, and the trial court, without hesitation, granted the request. (N.T. 7/29/92, 24). Whatever procedural irregularity occurred in the penalty phase of trial, it was the sole and

individuals, none were able to testify during the guilt phase of the trial because they had not maintained sufficient contact with Appellant to give character testimony. (N.T. 7/24/92, 42–44). The court noted that defense counsel made several attempts to have Appellant furnish additional character witnesses: "I think we should put on the record that you [defense counsel] have been asking [Appellant] for character witnesses all along and he has not come up with anyone and you talked to his father...." (N.T. 7/24/92, 43–44).

direct result of Appellant's own actions. Accordingly, he can not now be heard to complain that he suffered prejudice as a result of the remedial measures taken by defense counsel and the trial court to insure that he received a fair trial. *Cf. Commonwealth ex rel. Green v. Rundle*, 422 Pa. 236, 221 A.2d 187 (1966) (no double jeopardy violation resulting from retrial of appellant due to the fact that first trial was terminated as a result of his flight from the jurisdiction).

Lastly, Appellant contends that there was insufficient evidence to support the jury's finding that the killing in this case was committed while in the perpetration of a felony. In support of this contention, Appellant cites to the fact that the second penalty phase jury did not have the benefit of hearing all of the facts at trial. He does not explain the significance of this fact or how it renders the aggravating circumstance in this case unsupported by the evidence. Nevertheless, it is our statutory obligation to insure that the sole aggravating circumstance in this case is supported by sufficient evidence. *See* 42 Pa.C.S. § 9711(h)(3)(ii).

Appellant confessed that he had been smoking crack cocaine on the day of the murder. (N.T. 1/21/93, 45). With no more cocaine or money to purchase same, he remembered that Ms. Phillips kept cash in her pocketbook. (N.T. 1/21/93, 45). He then went to Ms. Phillips' house and entered the residence with the intention of stealing money in order to purchase cocaine. (N.T. 1/21/93, 45–46). Upon entering the house, he viciously attacked Ms. Forte and demanded money from her. (N.T. 1/21/93, 45). Appellant also told police that if Ms. Forte had not been present, he would have taken the money from Ms. Phillips' pocketbook while she was upstairs retrieving his belongings. (N.T. 1/21/93, 49–50). This evidence unquestionably supports the jury's finding that the killing was committed while in the perpetration of a felony. *See Commonwealth v. Basemore*, 525 Pa. 512, 582 A.2d 861 (1990), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992) (evidence that the appellant committed a burglary and robbery during the commission of a murder was sufficient to support the

aggravating circumstance of killing while in the perpetration of a felony).

We are likewise satisfied from our review of the record that the sentence imposed in this case was not the product of passion, prejudice, or any other arbitrary factor. In addition, the information compiled by the Administrative Office of Pennsylvania Courts indicates that the sentence imposed in this case is not disproportionate to the sentence imposed in similar cases.

Judgement of sentence affirmed.[9]

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

9. The prothonotary of the Supreme Court is directed to transmit the full and complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).