J. A02033/20

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　v.　　　　　　　　:
　　　　　　　　　　　　　　　　　:
GEORGE J. SHALLENBERGER,　　　　:　　　　No. 399 WDA 2019
　　　　　　　　　　　　　　　　　:
　　　　　　　　Appellant　　　　 :


Appeal from the Judgment of Sentence Entered March 4, 2019,
in the Court of Common Pleas of Washington County
Criminal Division at No. CP-63-CR-0003107-2017


BEFORE:　SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　　FILED AUGUST 26, 2020

George J. Shallenberger appeals from the March 4, 2019 judgment of sentence entered by the Court of Common Pleas of Washington County following his conviction of terroristic threats with intent to terrorize another.[1] The trial court sentenced appellant to a term of 2-23 months' incarceration. After careful review, we affirm.

The trial court provided the following factual history:

> The first witness for the Commonwealth was Chief Clayton Shell, who is employed as the "chief of police for Ringgold School District Police Department." Chief Shell testified that between October 18, 2017 and November 21, 2017, the teachers of the Ringgold School District "were on strike" and "were on the roadways at the edge of the [school] property, picketing." The teachers "were picketing at all four schools" of the Ringgold School District. On

_____

[1] 18 Pa.C.S.A. § 2706(a)(1).

November 9, 2017 at "about 11:15, 11:20 that morning," Chief Shell received a telephone call from a Ringgold teacher about several Facebook posts "that everybody was seeing." This teacher "texted" Chief Shell "some screenshots of the posts." The first post was made by "George Shallenberger" on November 8, 2017 and stated: "Happiness is a Warm Gun." The next post was also made by "George Shallenberger" on the same date and stated: "Guns don't kill people, I kill people." Both of these posts were made to [a]ppellant's "personalized Facebook profile page."

Chief Shell also received screenshots of several posts [a]ppellant made that day — November 9, 2017 — on a Facebook page [en]titled "Mon Valley Views," which was described by Chief Shell as a "thread about the strike; people for it, against it; for the teachers, against the teachers; this was all within that thread." On this page, one individual made a post in which he or she asserted that "not one of the district's proposals has done anything to make Ringgold even remotely competitive with surrounding districts." This individual stated that "[w]e would surely never be able to retain staff" by paying "a teacher with 11 years in the district and a master's degree a salary of $45,100 (or less) in 2021-2022." Finally, the individual stated: "Failing to pay the teachers a competitive wage is educationally irresponsible." Appellant directly responded to this individual, saying: "You're an idiot." Beneath that post, [a]ppellant made his own post, stating: "Let's raise taxes for these worthless assholes…I want to take away from my family to give to them. They sure have some nice cars for not making any money. D-bags." Immediately after that post, [a]ppellant posted: "Easiest job in the world but they need more money. Shoot them and start over."

. . . .

The [trial] court also heard testimony from Officer Kevin Harris of the City of Monongahela Police Department. Officer Harris confirmed that Chief Shell contacted him on November 9, 2017 and informed

him of [a]ppellant's Facebook posts. After obtaining a search warrant for [a]ppellant's Facebook records, Officer Harris received records of [a]ppellant's "home page, as well as his biographical information from Facebook." In receiving these records, Officer Harris discovered that [a]ppellant made a post on his home page on October 6, 2017, which stated: "Fucking schoolteachers need to get real jobs. Damn snowflakes." Officer Harris confirmed, through these records, that [a]ppellant's "Guns don't kill people, I kill people" post was made on November 8, 2017, and stated that it was made at 3:24 p.m. Appellant's "Happiness is a warm gun" post was also confirmed to be posted on November 8, 2017 at 3:25 p.m. Officer Harris confirmed that the November 8, 2017 posts were made on [a]ppellant's home page and that the November 9, 2017 posts, including the "Shoot them and start over" post, were not made on [a]ppellant's home page.

Trial court opinion, 5/7/19 at 5-7 (citations to the record omitted).

The first witness for the defense was [a]ppellant. Appellant denied that he intended to frighten any teachers or that he intended to cause any kind of evacuation with his Facebook posts. In regards to his November 8, 2017 posts, [a]ppellant stated that neither post had anything to do with the Ringgold teachers or the strike. Appellant explained that he is a fan of the musical group The Beatles and that "Happiness is a Warm Gun" is a song by this group. He stated that he had heard the song on the radio on November 8, 2017 and posted the lyrics on his Facebook home page when he returned to his residence "[b]ecause it's a song you don't hear very often." He testified that he had previously posted the song on Facebook "a few years ago." Furthermore, [a]ppellant claimed the "Guns don't kill people. I kill people" post was not meant to express "anger or frustration" about the strike. Instead, he stated that this phrase was a reference to the film Happy Gilmore, in which one of the characters wears a t-shirt bearing that exact phrase. Appellant stated that he posted the phrase on his Facebook home page because he

and his co-workers had been "talking about it that night at work."

Appellant stated that he made the November 8, 2017 posts after his shift ended and before he went to sleep, but this contradicts Officer Harris' testimony that [a]ppellant made these posts at 3:24 p.m. and 3:25 p.m. according to his Facebook records. Appellant testified about his work schedule and explained that he leaves his residence at "around 6:00 p.m." for work and returns to his residence at "[a]bout 8:00 a.m.," and then goes to sleep at "[a]bout 9 o'clock, 9:30." When asked about this discrepancy on cross-examination, [a]ppellant modified his version of events and agreed that the posts were made at 3:24 p.m. and 3:25 p.m.

Appellant then addressed his "Shoot them and start over" post on November 9, 2017. When asked if he made this post with the intention of putting the teachers in fear, he stated: "No, I was just blowing off some steam, that's all. I'm really sorry I put them in fear, but I didn't mean to. It wasn't my intent." Appellant claimed he was not referring to teachers in the "Shoot them and start over" post, and he repeatedly made this assertion during cross-examination. He also repeatedly described the posts as "blowing off some steam" or "running [his] mouth." He did, however, admit that he was referring to teachers in the post immediately before the "Shoot them and start over" post, which stated: "Let's raise taxes for these worthless assholes…I want to take away from my family to give to them. They sure have some nice cars for not making any money. D-bags." Regarding the Mon Valley Views Facebook page, [a]ppellant testified that he was able to access the page "without any kind of special subscription" and indicated that it was publicly available. Appellant also indicated that there were "other various people" posting on this page.

Appellant also admitted he was referring to teachers in his October 6, 2017 post: "Fucking schoolteachers need to get real jobs. Damn snowflakes." He

indicated he made this post because he disagreed with the Ringgold teachers going on strike to acquire increased wages. When asked if he felt the teachers of Ringgold School District deserved a "raise" in wages, he answered, "No, I don't think they needed one." He also expressed concern that his taxes may be increased if the teachers were to receive increased wages. Appellant testified that he was motivated to post on the Mon Valley Views Facebook page because he "saw something on there, somebody wanted to raise taxes to give the teachers a raise, and I didn't agree with that." However, in spite of his stated disagreement with the strike and with increased wages for the Ringgold teachers, [a]ppellant maintained that he "hardly even thought about" the Ringgold teachers or the strike.

After appellant's testimony, the [trial] court heard testimony from seven character witnesses: Dennis Kelly, Sandra Shallenberger, Dorothy Shallenberger, Marianne Krajnik, Father Vincent Velas, Richard Cook, and Christopher Wilson. Sandra Shallenberger, [a]ppellant's wife, testified that he never made any statements to her about "wanting to hurt the teachers or put them in fear." She testified that [a]ppellant was a fan of The Beatles and that "Happiness is a Warm Gun" is one of his favorite songs. She also indicated that [a]ppellant had previously "posted it on Facebook back in 2014." Furthermore, Mrs. Shallenberger testified that [a]ppellant was a fan of Happy Gilmore. When asked if [a]ppellant ever told her that he made the November 8, 2017 posts "to make a comment or statement about the Ringgold schoolteachers," Mrs. Shallenberger replied: "No."

With the exception of Sandra Shallenberger, [defense counsel] asked each character witness about [a]ppellant's reputation in the community, and each witness stated that [a]ppellant has a reputation as being a law-abiding citizen. On cross-examination, [the Commonwealth] asked each witness who testified to [a]ppellant's law-abiding reputation about [a]ppellant's 2000 conviction for recklessly endangering another person, and specified to each

witness that the incident involved [a]ppellant pointing a firearm at his girlfriend. Each witness indicated that [a]ppellant's conviction did not cause him or her to raise an objection to his law-abiding reputation.

Id. at 10-13 (citations to the record omitted).

Prior to trial, appellant filed a motion for partial change of venue, which the trial court denied.

Following trial, a jury convicted appellant of one count of terroristic threats with the intent to terrorize another on December 5, 2018. On March 4, 2019, the trial court imposed sentence. Appellant filed a timely notice of appeal on March 8, 2019. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. The trial court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Did the trial judge commit an abuse of discretion in failing to dismiss the Commonwealth's case as a matter of law as the Commonwealth failed to offer sufficient evidence to establish [] appellant committed any crime of terroristic threats?

2. Did the trial judge commit an abuse of discretion in denying appellant's motion to preclude the Commonwealth from offering into evidence [] appellant's Facebook postings on his homepage from November 8, 2017 and October 6, 2017?

3. Did the trial judge commit an abuse of discretion by denying appellant's motion to preclude the Commonwealth from using appellant's prior

guilty plea to the crime of terroristic threats in the year 2000?

4.  Did the trial judge commit an abuse of discretion by precluding [] appellant and his wife from offering evidence of mitigating circumstances as to why [] appellant pled guilty to the crime of terroristic threats in the year 2000?

[5.]  Did the cumulative effect of all of the errors on evidentiary rulings deprive appellant of a fair trial?

[6.]  [Did] the [trial] court err[] in denying [appellant's] request for a change of venue[?]

Appellant's brief at 8 (extraneous capitalization omitted).[2]

## I.

In his first issue, appellant contends that the Commonwealth failed to produce sufficient evidence to warrant a conviction of terroristic threats with the intent to terrorize another. Specifically, appellant argues that the Commonwealth failed to establish beyond a reasonable doubt that appellant made a threat to commit a crime of violence and communicated that threat with the intent to terrorize. (Id. at 16.)

Our well-settled standard of review for sufficiency of the evidence claims is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

---

[2] Appellant's issues have been re-ordered for ease of discussion.

> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

Commonwealth v. Franklin, 69 A.3d 719, 722-723 (Pa.Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." Commonwealth v. Ramtahal, [] 33 A.3d 602, 607 ([Pa.] 2011).

Commonwealth v. Sebolka, 205 A.3d 329, 336-337 (Pa.Super. 2019).

This court has held that, "[t]he elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize[.]" Commonwealth v. Walls, 144 A.3d 926, 936 (Pa.Super. 2016), appeal denied, 167 A.3d 698 (Pa. 2017), quoting Commonwealth v. Vergilio, 103 A.3d 831, 833 (Pa.Super. 2014), appeal denied, 114 A.3d 416 (Pa. 2015). We have also held that a threat to commit a crime of violence need not be directly communicated to anyone in order to warrant a conviction of terroristic threats. Commonwealth v. Beasley, 138 A.3d 39, 47 (Pa.Super. 2016) (citation omitted), appeal denied, 161 A.3d 791 (Pa. 2016). As further noted by this court,

> The Commonwealth does not have to prove that the defendant had the ability to carry out the threat or that the threatened individual believed the defendant would carry out the threat, as neither is an element of the offense. In re J.H., 797 A.2d 260, 262 (Pa.Super. 2002) (citation omitted). Rather, the statute seeks to prevent the psychological distress that follows from an invasion of another's sense of personal security. Beasley, 138 A.3d at 46.

> The Official Comment to Section 2706 explains: "The purpose of th[is] section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.[A.] § 2706 cmt. See also Commonwealth v. Tizer, 684 A.2d 597, 600 (Pa.Super. 1996) (noting that the statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute).

Commonwealth v. Crosby, 226 A.3d 104, 107 (Pa.Super. 2020), appeal denied, ---A.3d---, 2020 WL 3529440 (Pa. June 30, 2020).

In the instant case, appellant admitted that on November 9, 2017, he made the following post to a thread discussing the Ringgold teachers' strike on the Facebook page entitled Mon Valley Views: "Easiest job in the world but they need more money. Shoot them and start over." (See notes of testimony, 12/4/18 at 200, 206-207.)

Turning to the second element of terroristic threats—whether the threat was communicated with the intent to terrorize—appellant argues that he did not communicate his threat directly to any Ringgold teacher. (Appellant's brief at 17.) Further, appellant maintains that, "[w]ere it not for the actions of Lynette Rowe[3] trolling through social media cites [sic] and coming across this conversation, feeling uncomfortable, and calling her fellow teachers, this unfortunate incident would not have occurred." (Id.) During trial, appellant testified that he did not post the statement at issue for teachers to see. (Notes of testimony, 12/4/18 at 207.) Appellant's argument misses the mark.

Here, the record reflects that appellant made his post on a public Facebook page in a thread described by Chief Shell as a "thread about the strike; people for it, against it; for the teachers, against the teachers; this was

---

[3] Ms. Rowe is a teacher at Ringgold High School who discovered appellant's November 9, 2017 post to the Mon Valley News Facebook page and subsequently discovered appellant's November 8, 2017 posts to his personal Facebook page. (Notes of testimony, 12/4/18 at 130-133.)

all within that thread." (Notes of testimony, 12/4/18 at 52; see also trial court opinion, 5/7/19 at 23.) We, therefore, agree with the trial court's analysis with regard to appellant's intent:

> Appellant [] was fully aware that his threat would be seen by many people in the community. Appellant's choice to post the threat on the [Mon Valley Views] Facebook page as opposed to his profile page, where the threat was less likely to seen by many people, demonstrates that [a]ppellant made the threat with the intent to terrorize the teachers.

Trial court opinion, 5/7/19 at 23-24.

Moreover, the Commonwealth introduced a series of Facebook posts authored by appellant in which he referenced the Ringgold teachers' strike. The record reflects that on October 6, 2017, appellant posted the following to his personal Facebook page: "F**king schoolteachers need to get real jobs. Damn snowflakes." (Notes of testimony, 12/4/18 at 89-90.) On the Mon Valley Views Facebook page, prior to posting "Shoot them and start over," appellant posted the following on November 8, 2017: "Let's raise taxes for those worthless assholes . . . I want to take away from my family to give to them? They sure have some nice cars for not making any money. D-bags." (Id. at 57.) Appellant admitted that he was referring to the Ringgold teachers, to the extent of owning nice cars. (Id. at 215.) As noted by the trial court, this series of Facebook postings by appellant established an animus toward the Ringgold teachers and his opposition to their decision to strike. (See trial court opinion, 5/7/19 at 22.)

Additionally, the record reflects that on November 8, 2017, appellant posted "Happiness is a Warm Gun," and "Guns don't kill people, I kill people" to his personal Facebook page. (Notes of testimony, 12/4/18 at 53, 55.) Appellant respectively attributed these posts to a song written by The Beatles and to a t-shirt worn by a character in the film Happy Gilmore. (Id. at 204-205.) Appellant further testified that he made both of these posts because he had both heard "Happiness is a Warm Gun" on the radio and had been discussing Happy Gilmore with his co-workers the previous day. (Id.)

The trial court concluded that appellant's November 8, 2017 posts reflect his approval of the use of firearms and that he sought to portray himself as someone who commits acts of violence with firearms. (Trial court opinion, 5/7/19 at 21.) In reviewing the evidence in the light most favorable to the Commonwealth, we find that the jury could have reasonably inferred that appellant's November 8, 2017 posts on his personal Facebook page reflected both his approval of the use of firearms and his intention to portray himself as someone who commits acts of violence with firearms. Sebolka, 205 A.3d at 337, quoting Franklin, 69 A.3d at 723. Further, it is exclusively within the jury's purview as to whether it chose to accept that appellant's November 8, 2017 posts on his personal Facebook page were innocuous references to The Beatles and Happy Gilmore, as appellant testified. Sebolka, 205 A.3d at 337, quoting Ramtahal, 33 A.3d at 607.

Accordingly, after viewing the evidence in the light most favorable to the Commonwealth, we find that the Commonwealth established the elements of terroristic threats with intent to terrorize another beyond a reasonable doubt and appellant's first issue is without merit.

II.

In his next three issues, appellant raises allegations of trial court error in evidentiary rulings. Appellate review of evidentiary rulings by the trial court are governed by the following standard of review:

> Appellate courts review evidentiary decisions for an abuse of discretion. *Commonwealth v. Walker*, [] 92 A.3d 766, 772 ([Pa.] 2014) (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused." *Id.* at 772-773 (internal quotation marks and citations omitted).

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1090 (Pa. 2017), cert. denied sub nom. *Jacoby v. Pennsylvania*, 139 S.Ct. 58 (2018).

In his second issue, appellant avers that the trial court erred when it denied appellant's motion in limine to preclude the Commonwealth from offering into evidence October 6, 2017 and November 8, 2017 postings from appellant's personal Facebook page. (Appellant's brief at 19.) The trial court determined that the postings at issue were admissible under Pa.R.E. 404(b) as res gestae. (Trial court opinion, 5/7/19 at 17.)

The particular Pennsylvania Rule of Evidence governing the admission of "prior bad acts" is Pa.R.E. 404(b) which provides, in relevant part:

(b)    Other crimes, wrongs, or acts.

. . . .

(2)    Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3)    Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b)(1)-(3). Under this rule, the admission of prior "bad acts" is inadmissible for the sole purpose of proving the defendant has a bad character, or a "criminal propensity." Commonwealth v. Powell, [] 956 A.2d 406, 419 ([Pa.] 2008). Nevertheless, this rule permits the admissibility of such evidence for other relevant purposes such as:

showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, . . . to establish identity [,][or] where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

> *Id.* However, admission for these purposes is allowable only whenever the probative value of the evidence exceeds its potential for prejudice. Pa.R.E. 404(b)(3).

Commonwealth v. Briggs, 12 A.3d 291, 336-337 (Pa. 2011), cert. denied sub nom. Briggs v. Pennsylvania, 565 U.S. 889 (2011). Our supreme court further held that res gestae evidence of prior bad acts may be admissible "when relevant to furnish the complete story or context of events surrounding the crime." Commonwealth v. Crispell, 193 A.3d 919, 936 (Pa. 2018), quoting Commonwealth v. Weiss, 81 A.3d 767, 798 (Pa. 2013) (citations omitted). The Crispell court further noted that "[w]hen the trial court admits evidence of a defendant's prior bad acts, 'the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose.'" Crispell, 193 A.3d at 937, quoting Commonwealth v. Solano, 129 A.3d 1156, 1178 (Pa. 2015). It is well settled that juries are presumed to following the trial court's instructions. Commonwealth v. Aikens, 168 A.3d 137, 143 (Pa. 2017), citing Commonwealth v. Bullock, 913 A.2d 207, 218 (Pa. 2006), cert. denied sub nom. Bullock v. Pennsylvania, 550 U.S. 941 (2007).

Here, appellant argues that his October 6 and November 8, 2017 posts to his personal Facebook page were too vague and too remote to be admitted as res gestae evidence. (Appellant's brief at 20-21.) Additionally, appellant contends that his November 8, 2017 posts "are simply irrelevant." (*Id.* at 20.) In support of his position, appellant directs us to Commonwealth v.

Yocolano, 169 A.3d 47 (Pa.Super. 2017). Appellant's reliance on Yocolano is misplaced.

In Yocolano, the defendant was convicted of rape and other related crimes. Id. at 50. During trial, the defendant sought to introduce Facebook posts made by the victim in the month following the incident central to the case that the defendant claimed were probative in showing the desire of the victim to prevail in a child custody dispute with the defendant. Id. at 58-59. Specifically, the defendant sought to introduce the following three posts into evidence: "I'm bulletproof"; "Everything is finally falling right into place"; and "This is a picture of my son. I am so glad that we'll be spending New Year's together all by myself." Id. at 59. The Yocolano court held that the above posts were vague and remote, as the posts never mentioned the defendant specifically and never referenced the parties' custody dispute. Id. The court further concluded that the posts at issue "could conceivably refer to any number of matters. The posts simply do not support a reasonable inference or presumption regarding a material fact of whether sexual assaults occurred." Id.

The same cannot be said in the instant case. Indeed, appellant's October 6, 2017 post directly references teachers. Moreover, appellant admitted that his October 6, 2017 post was in reference to the Ringgold teachers' strike and that the post was a means for appellant to voice his disagreement with the teachers' position during their labor dispute with the

school district. (Notes of testimony, 12/4/18 at 218.) We also find that appellant's October 6, 2017 post, as well as appellant's November 8, 2017 posts to his personal Facebook page—"Happiness is a Warm Gun" and "Guns don't kill people, I kill people"—were properly admitted as res gestae evidence, as these posts may be reasonably inferred by the jury to be part of the sequence of events leading to appellant's "Shoot them and start over" post from November 9, 2017. See Crispell, 193 A.3d at 936.

Appellant further contends that the trial court's admission of his October 6 and November 8, 2017 posts had the effect of prejudicing the jury against appellant, thereby eviscerating appellant's right to a fair trial. (Appellant's brief at 19-20.)

Here, the record reflects that the trial court provided the following jury instruction to the jury after the Commonwealth introduced evidence of appellant's November 8, 2017 posts:

> . . . I want to give the jury a brief, cautionary instruction on these posts.
>
> The only post that is the actual subject of the terroristic threat charge is the final one that was made on November 9th, "Easiest job in the world, but they need more money. Shoot them and start over."
>
> The other posts which were just published to the jury being on November 8th or 9th are not, themselves, subjects of the terroristic threat charges filed against [appellant]. The Commonwealth is offering them, however, to provide circumstantial evidence of [appellant's] state of mind or intent, or to provide an overall context to the final post of November 9th, which is the subject of the terroristic threat charge.

Notes of testimony, 12/4/18 at 61-62.[4]

We note, however, and the trial court acknowledges, that the trial court did not provide the jury with a cautionary instruction with regard to appellant's October 6, 2017 post. (See trial court opinion, 5/7/19 at 18.) We find that any error on the part of the trial court in failing to provide a cautionary instruction to the jury pertaining to appellant's October 6, 2017 post is harmless.

"The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." Commonwealth v. Hairston, 84 A.3d 657, 671 (Pa. 2014), quoting Commonwealth v. Rasheed, 640 A.2d 896, 898 (Pa. 1994) (citation omitted). Our supreme court has recognized that harmless error exists if the record demonstrates that "the error did not prejudice the defendant or the prejudice was de minimus[.]" Hairston, 84 A.3d at 671, quoting Commonwealth v. Hawkins, 701 A.2d 492, 507 (Pa. 1997) (citation omitted).

Here, the record reflects that appellant was not prejudiced by the trial court's failure to provide the jury with a cautionary instruction with regard to appellant's October 6, 2017 post. Because the trial court instructed the jury that only appellant's November 9, 2017, "Shoot them and start over," post

---

[4] The trial court did not address this issue in its final instructions to the jury prior to deliberations.

formed the basis for the terroristic threats charge, we hold that the probative value of the October 6, 2017 post exceeds its potential for prejudice. Pa.R.E. 404(b)(3); Briggs, 12 A.3d at 336-337; Aikens, 168 A.3d at 143.

We, therefore, discern no abuse of discretion on the part of the trial court when it admitted appellant's October 6, 2017 and November 8, 2017 Facebook posts as res gestae evidence.

### III.

In his third and fourth issues, appellant contends that the trial court erred when it denied appellant's motion in limine to preclude the Commonwealth from introducing evidence of his 2000 guilty plea to one count of recklessly endangering another person ("REAP"),[5] and that the trial court further erred when it failed to permit appellant and his wife to testify as to the mitigating circumstances of that guilty plea. (See appellant's brief at 22-24.)

In his third issue, appellant specifically argues that the 2000 guilty plea to REAP was too remote in time to be relevant, that REAP is not a crimen falsi offense, and that the trial court's ruling was more prejudicial than probative. (Id. at 22.) The Pennsylvania Rules of Evidence permit a defendant in a criminal case to offer evidence of the defendant's pertinent

---

[5] We note that in his statement of questions presented and in the argument section of his brief, appellant refers to a 2000 guilty plea to terroristic threats. (Appellant's brief at 8, 22, 24.) The record reflects that the Commonwealth sought to introduce evidence of appellant's guilty plea to one count of REAP from 2000. (See notes of testimony, 12/3/18 at 3-4.) Accordingly, our analysis will address evidence of appellant's 2000 REAP conviction.

trait. Pa.R.E. 404(a)(2)(A); see also Pa.R.E. 405(a) (permitting testimony about a person's reputation). In cases where such evidence is admitted, the Commonwealth may offer evidence to rebut the defendant's character evidence. Id. As this court has previously warned, a defendant's choice to introduce character evidence does not come without risk. Commonwealth v. Ross, 856 A.2d 93, 101 (Pa.Super. 2004), appeal denied, 889 A.2d 1215 (Pa. 2005), cert. denied sub nom. Ross v. Pennsylvania, 547 U.S. 1045 (2006), citing Commonwealth v. Nellom, 565 A.2d 770, 775 (Pa.Super. 1989) (citation omitted). Indeed, the Commonwealth may cross-examine a defendant's character witnesses with "questions regarding the defendant's prior convictions for crimes involving the relevant character trait[,]" for the purpose of testing "the accuracy and completeness of the witness's knowledge of the defendant's reputation." Id. (citations omitted).

> [Our supreme court] has consistently repeated that although evidence of good character may not be rebutted by evidence of specific acts of misconduct, a character witness may be cross-examined regarding his or her knowledge of particular acts of misconduct by the defendant to test the accuracy of his or her testimony and the standard by which he or she measures reputation.

Commonwealth v. Kouma, 53 A.3d 760, 769 (Pa.Super. 2012), quoting Commonwealth v. Fletcher, 861 A.2d 898, 915-916 (Pa. 2004) (quotation marks, quotation, and citation omitted).

This is not to be confused with Pa.R.E. 609, which permits the introduction of evidence of a witness's conviction of a crime involving

dishonesty or false statement as a means of attacking the credibility of a witness. Pa.R.E. 609(a) (emphasis added). Rule 609 provides limitations on using evidence of a conviction if more than 10 years have passed since the witness's conviction. Pa.R.E. 609(b). Such limitations are not applicable when evidence of a defendant's previous convictions is introduced pursuant to Rules 404 and 405. *Ross*, 856 A.2d at 102 (emphasis added).

Here, appellant called six character witnesses to testify on his behalf, all of whom testified that they understood appellant's reputation in the community to be that of a law-abiding citizen. (Notes of testimony, 12/4/18 at 235, 252-253, 258; 12/5/18 at 8-9, 13-14, 19.) On cross-examination, the Commonwealth asked each of appellant's character witnesses if the overall community was aware that appellant pleaded guilty to REAP when he was accused of pointing a handgun at his girlfriend. (Notes of testimony, 12/4/18 at 236-237, 253-255, 258-259; 12/5/18 at 10, 14-15, 20-21.)

By introducing evidence of appellant's reputation in the community as a law-abiding citizen, appellant opened the door for the Commonwealth to confront appellant's character witnesses on cross-examination with evidence of his 2000 guilty plea to REAP. In the instant case, the time of appellant's previous guilty plea and whether the previous guilty plea was for a *crimen falsi* offense are of no import. Therefore, we find that the trial court's denial of appellant's motion in limine was not an abuse of discretion. Accordingly, appellant's third issue is without merit.

IV.

In his fourth issue, appellant avers that the trial court erred when it failed to permit appellant and his wife from testifying as to the mitigating circumstances surrounding his 2000 REAP guilty plea. Appellant states that he "is unaware of any legal authority which would preclude [a defendant] from presenting mitigating evidence to explain his one and only brush with the law from nineteen years earlier." (Appellant's brief at 24.)

The trial court concluded that testimony regarding the details surrounding appellant's 2000 REAP guilty plea would not be relevant. (Trial court opinion, 5/7/19 at 26.) The Pennsylvania Rules of Evidence state that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Pa.R.E. 401 (formatting omitted). Our supreme court further defined relevant evidence as "evidence that 'logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact[.]'" Commonwealth v. Jordan, 65 A.3d 318, 324 (Pa. 2013), quoting Commonwealth v. Williams, 896 A.2d 523, 539 (Pa. 2006). In the alternative, even if evidence is found to be relevant, a trial court may still exclude it if the evidence's "probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Commonwealth v. Brown, 212 A.3d 1076, 1086 (Pa.Super. 2019), appeal denied, 221 A.3d 643 (Pa. 2019), quoting Pa.R.E. 403; see also Commonwealth v. Bryant, 67 A.3d 716, 726 (Pa. 2013).

In the instant case, the trial court concluded that the evidence at issue is "clearly irrelevant" and that the circumstances of appellant's 2000 guilty plea to REAP did "not in any way tend to prove any material fact and [had] no bearing on the matter at hand." (Trial court opinion, 5/7/19 at 27.) The trial court further concluded that even if the evidence at issue was relevant, it would have "posed a significant distraction and would have diverted the jury from its duty of determining whether [a]ppellant was guilty of terroristic threats." (Id. at 28.) The trial court ultimately determined that the probative value of such evidence would have been outweighed "by the dangers of confusing the issues, misleading the jury, and wasting time." (Id.)

We, therefore, discern no abuse of discretion on the part of the trial court. Accordingly, appellant's fourth issue is without merit.

V.

In his fifth issue, appellant complains that the cumulative effect of the trial court's errors on evidentiary rulings deprived him a fair trial. (Appellant's brief at 27.) Our supreme court has held that, "there can be no 'cumulative effect' prejudice when there was no harm in the first instance." Commonwealth v. McGill, 680 A.2d 1131, 1136 (Pa. 1996), cert. denied sub nom. McGill v. Pennsylvania, 519 U.S. 1152 (1997). The McGill court

further noted that a cumulative effect of evidentiary errors claim, "is a mere makeweight, and a rather blatant attempt to bootstrap. . . .  [N]o number of failed claims may collectively attain merit if they could not do so individually." Id., quoting Commonwealth v. Murphy, 657 A.2d 927, 936 n.6 (Pa. 1995) (citation omitted).

Here, the vast majority of appellant's argument consists of a litany of rhetorical questions that we have answered in our discussion of appellant's previous evidentiary issues.  Having found that none of appellant's previous evidentiary claims entitled him to relief, we likewise find that the cumulative effect of the trial court's evidentiary rulings did not deprive appellant of a fair trial.  McGill, 680 A.2d at 1136.

## VI.

In his sixth issue, appellant argues that the trial court erred when it denied appellant's motion to change the venue of the trial.  Specifically, appellant claims that the media attention that this case received prior to trial tainted the Washington County pool of prospective jurors.  (Appellant's brief at 25.)  Further, appellant claims that the trial court's decision not to hold a hearing on his motion was an abuse of discretion.  (Id.)

> A trial court's decision on a defendant's motion for a change of trial venue based on the claimed existence of pretrial publicity prejudicial to his or her right to trial before an impartial jury is one vested within its sound discretion, and a trial court's decision to deny such a motion will not be overturned by this Court on appeal, unless the record evidences that the trial court has abused its discretion in making its ruling.

Commonwealth v. Weiss, 776 A.2d 958, 964 (Pa. 2001). We have recognized that "the trial court is in the best position to assess the atmosphere of the community and to judge the necessity of any requested change." Commonwealth v. Tharp, [] 830 A.2d 519, 529 ([Pa.] 2003). In reviewing the trial court decision not to grant a change of venue the focus of our inquiry is to determine whether any juror formed a fixed opinion of the defendant's guilt or innocence due to the pretrial publicity. Commonwealth v. Drumheller, [] 808 A.2d 893, 902 ([Pa.] 2002).

A change in venue is compelled whenever a trial court concludes a fair and impartial jury cannot be selected from the residents of the county where the crime occurred. Weiss, [] 776 A.2d at 964. As a general rule, for a defendant to be entitled to a change of venue because of pretrial publicity, he or she must show that the publicity caused actual prejudice by preventing the empaneling of an impartial jury. Commonwealth v. Robinson, [] 864 A.2d 460, 484 ([Pa.] 2004) (quoting Drumheller, [] 808 A.2d at 902); [Commonwealth v.] Karenbauer, [] 715 A.2d [1086,] 1092 [(Pa. 1998)]. The mere existence of pretrial publicity alone, however, does not constitute actual prejudice. Simply because prospective jurors may have heard about a case through media reports does not render them incapable of jury service, since, in today's "information age," where news of community events are disseminated virtually instantaneously by an ever multiplying array of delivery methods, it would be difficult to find 12 jurors who do not at least have some knowledge of the facts of [a case].

. . . .

Prejudice will be presumed whenever a defendant demonstrates that the pretrial publicity: "(1) was sensational, inflammatory, and slanted toward conviction, rather than factual and objective; (2) revealed the defendant's prior criminal record, if any, or referred to confessions, admissions or

reenactments of the crime by the defendant; or (3) derived from official police or prosecutorial reports." Tharp, [] 830 A.2d at 529; Karenbauer, [] 715 A.2d at 1092. However, if the defendant proves the existence of one or more of these circumstances, a change of venue will still not be compelled unless the defendant also demonstrates that the presumptively prejudicial pretrial publicity "was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated." Tharp, [] 830 A.2d at 529.

Commonwealth v. Briggs, 12 A.3d 291, 313-314 (Pa. 2011), cert. denied sub nom. Briggs v. Pennsylvania, 565 U.S. 889 (2011).

In his brief, appellant's argument contains general allegations about the extent of local media coverage of his case and the number of people living in Washington County with direct or indirect affiliation with Ringgold School District teachers. (Appellant's brief at 25.) Appellant's argument further contains an "aside" alleging that 11 of the 40 members of the jury pool "were either retired teachers, relatives of teachers, or active teachers." (Id. at 25-26.)

Applying our supreme court's holding in Briggs, the trial court reached the following conclusion:

Because appellant's assertions are not supported by any evidence whatsoever, [the trial] court [found] that appellant's motion for partial change of venue was properly denied. Appellant has not demonstrated that actual prejudice has "prevented the empaneling of an impartial jury." Briggs, 12 A.3d at 313. Even if this case received some amount of pretrial publicity, "[t]he mere existence of pretrial publicity alone . . .

does not constitute actual prejudice. Id. Furthermore, appellant has not demonstrated any of the three circumstances stated in Briggs. Even if one or more of these circumstances had been demonstrated, appellant would still have to show that the community was "saturated" by the pretrial publicity, and that "there was insufficient time between the publicity and the trial for any prejudice to have dissipated. Id. at 314. Appellant completely fails to fulfill any of the requirements for establishing prejudice, and therefore, his [venue] claim should be dismissed.

Trial court opinion, 5/7/19 at 15 (extraneous capitalization and some quotation marks omitted).

Based on our review of the record, we can discern no abuse of discretion on the part of the trial court when it denied appellant's motion to change the venue of the trial. Accordingly, appellant's sixth issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2020